UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-cr-21 (DWF/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Shawn Michael Edderhoff,[1] | |
| Defendant. | |

---

This matter came before the undersigned United States Magistrate Judge upon Defendant Shawn Michael Ederhoff's Motion to Suppress Evidence Obtained as a Result of a November 19, 2012, Search and Seizure, [Docket No. 30], and Defendant's Motion to Suppress February 18, 2005, and November 19, 2012, Statements, Admissions, and Answers, [Docket No. 31]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on February 26, 2014, regarding the parties' pretrial discovery motions,[2] Defendant's motion to suppress evidence, and Defendant's motion to suppress statements.

For reasons discussed below, the Court recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of November 19, 2012, Search and Seizure, [Docket No. 30], be **DENIED**, and that Defendant's Motion to Suppress February 18, 2005, and November 19, 2012, Statements, Admissions, and Answers, [Docket No. 31], be **DENIED**.

---

[1] At the February 26, 2014, motion hearing, Defense counsel informed the Court that Defendant's name is spelled incorrectly throughout the docket, including in the indictment itself and in the official case caption. The Government represented that it would file a motion to correct the spelling of Defendant's name without need of a superseding indictment. Mr. Mohring represented that the Defense would not object to such a motion.
[2] The Court addressed the parties' discovery motions by separate Order, [Docket No. 44].

1

I.  **BACKGROUND AND STATEMENT OF FACTS**

   A.  **Background**

Defendant Shawn Michael Ederhoff is charged with two counts of receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). (Indictment [Docket No. 1], at 1-3).

At the February 26, 2014, motion hearing, the Court instructed the parties to meet and confer no later than Monday, March 3, 2014, at which time the parties were to determine whether they would be submitting supplemental briefing regarding Defendant's suppression motions, [Docket Nos. 30 and 31]. (Minute Entry [Docket No. 42]). By letter to the Court dated March 3, 2014, Defense counsel informed the Court that Defendant does not seek supplemental briefing and requested the pending motions be decided on the record as it currently exists before the Court. (Letter to Magistrate Judge [Docket No. 43]). The Court likewise did not receive any supplemental briefing from the Government. The Court took Docket Numbers 30 and 31 under advisement as of March 5, 2014.

   B.  **Facts[3]**

Two unrelated incidents from two distinct time periods are relevant to the present motions.

First, unrelated to the present charges against Defendant, Defendant made a statement to Stearns County Sheriff's Office Detective Troy Jansky (now Deputy Jansky) in 2005. On February 18, 2005, Deputy Jansky interviewed Defendant with regard to his relationship with a teenage girl.

---

[3] The facts are derived from the February 26, 2014, testimony of Stearns County Sheriff's Office Deputy Troy Jansky and Department of Homeland Security Special Agent Lawrence Propes, Government Exhibits 1-3, and Defense Exhibit 1.

On February 17, 2005, Deputy Jansky received a report from the Sartell High School Police Liaison Officer regarding a pregnant teenager. At the time the girl became pregnant, she was a minor (under the age of eighteen years old). Deputy Jansky interviewed the girl, who explained that she had met the Defendant over the internet, had moved to Minnesota in October 2004, from Indiana to live with Defendant, and she had been romantically involved with him. She was 17 years old at the time; Defendant was 36. Deputy Jansky testified that the difference in age between the minor and her romantic partner – the Defendant – prompted Deputy Jansky's investigation.

After interviewing the girl, Deputy Jansky placed a telephone call to Defendant and explained that he was interested in speaking with Defendant. Defendant was cooperative and voluntarily agreed to meet Deputy Jansky at Defendant's place of employment, Home Depot. Deputy Jansky did not call Defendant down to the Sheriff's Office, nor did he request Defendant's presence at any other location; the record before the Court indicates that Deputy Jansky was willing to meet Defendant wherever was most convenient for Defendant.

The interview took place in Deputy Jansky's unmarked car in the parking lot of Defendant's place of work. Deputy Jansky waited in the parking lot at the agreed-upon time, and Defendant came outside and voluntarily approached the car. Deputy Jansky was in plain clothes with his duty weapon holstered at his waist. Deputy Jansky recorded the interview with a hand-held tape recorder, held in plain sight. Upon beginning the conversation, Deputy Jansky informed Defendant that he was free to leave at any time, that his presence in Deputy Jansky's vehicle was purely voluntary, that he was not obligated to answer any questions, and that Defendant was not under arrest and would not be placed under arrest. Defendant's demeanor was normal and calm, and nothing indicated that he was under the influence of any drugs or alcohol

or that he did not understand Deputy Jansky. There was no indication that Defendant wished to terminate the interview at any point. At no point did Deputy Jansky administer any <u>Miranda</u> warning.

Fast-forwarding to the facts specifically giving rise to the present indictment, Department of Homeland Security Special Agent Lawrence Propes ("SA Propes") testified that DHS's Cyber Crimes Center, Child Exploitation Investigations Unit received an intelligence report from Danish authorities regarding a website entitled "Falko Video," dedicated to the production and distribution of child pornography. Investigation thereafter revealed that various user names and email addresses associated with Falko Video could be traced back to Defendant.

On November 19, 2012, law enforcement executed the search warrant for Defendant's home at approximately 10:00 a.m.[4] Approximately eight law enforcement officers dressed in raid vests clearly identifying them as law enforcement executed the warrant. SA Propes testified that Defendant and his wife were outside the house in the front yard when law enforcement approached the house. As criminal research/cyber specialists secured Defendant's computers, SA Propes and SA Drengson explained to Defendant that law enforcement was there to execute a federal search warrant and provided Defendant with a copy of the search warrant. Defendant gave no indication that he did not understand what was happening, and he was cooperative.

SA Propes informed Defendant that he was not under arrest and that he was free to leave at any time. Defendant responded that he understood and agreed to answer SA Propes's questions. Defendant indicated that he preferred to talk outside, near the front door to the house, and the agents obliged.

The agents proceeded to ask Defendant questions concerning his involvement with child pornography. Defendant answered questions cooperatively, told the agents that he understood

---

[4] The nature of the warrant and its supporting affidavit will be discussed in greater detail in Section III.A, <u>infra</u>.

child pornography to be depictions of children between the ages of zero and sixteen years old engaged in "lewd acts," and admitted that law enforcement would find child pornography on his laptop, in a file titled "secret pics," among other things. The agents spoke with Defendant for approximately thirty minutes, after which Defendant was <u>not</u> placed under arrest. At no point during the thirty-minute interview did Defendant request or indicate in any way that he desired a break or that he did not wish to continue to answer questions.

**II. DEFENDANT'S MOTION TO SUPPRESS FEBRUARY 18, 2005, AND NOVEMBER 19, 2012, STATEMENTS, ADMISSIONS, AND ANSWERS, [DOCKET NO. 31]**

Defendant moves the Court for an order suppressing all statements, admissions, and answers made by Defendant on February 18, 2005, and November 19, 2012, as (1) the statements, admissions, or answers by Defendant were made without the assistance or benefit of counsel, in violation of Defendant's Fifth and Sixth Amendment rights; (2) the statements, admissions, or answers made by Defendant were not freely and voluntarily given, in violation of Defendant's Fourth and Fifth Amendment rights; and (3) the statements, admissions, or answers were the result of interrogation, under circumstances that amount to custody, without the benefit of a valid advice-of-rights process. (Def.'s Mot. to Suppress Statements [Docket No. 31]).

"[<u>Miranda</u>] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." <u>United States v. Chipps</u>, 410 F.3d 438, 445 (8th Cir. 2005) (citing <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966)). <u>Miranda</u> warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way."

Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). However, law enforcement officers "are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him in custody." Id. (internal quotation omitted).

The Eighth Circuit considers six (6) factors when determining whether a suspect is in custody:

> (1) Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;
> (2) whether the suspect possessed unrestrained freedom of movement during questioning;
> (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;
> (4) whether strong arm tactics or deceptive stratagems were employed during questioning;
> (5) whether the atmosphere of the questioning was police dominated; or
> (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012) (citing United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)). "The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody." United States v. Axsom, 289 F.3d 496, 500-01 (8th Cir. 2002). Moreover, those factors are not exclusive; "[t]he analysis depends upon a review of the totality of circumstances, and '[t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview.'" Sanchez, 676 F.3d at 630-31 (citing United States v. Aldridge, 664 F.3d 705, 711

(8th Cir. 2011)). The ultimate determination is based on the totality of the circumstances, with none of the above factors being dispositive, and a particularly strong showing on one factor may compensate for a deficiency on another factor. Griffin, 922 F.2d at 1347. The key inquiry is whether there was a formal arrest or restraining of a defendant's movement to the degree associated with a formal arrest. Stansbury, 511 U.S. at 322.

Additionally, "[w]hether or not Miranda is implicated, the Supreme Court has recognized that, in order for a confession to be admitted into evidence, it must be voluntary if it is to satisfy the Fifth Amendment's right against self-incrimination." United States v. Pankey, No. 07-cr-214, 2007 U.S. Dist. LEXIS 86785, at *11 (D. Minn. Oct. 25, 2007) (DWF/RLE) (Erickson, C.M.J.) (citing Dickerson v. United States, 530 U.S. 428, 433-34 (2000)), adopted by 2007 U.S. Dist. LEXIS 84319 (D. Minn. Nov. 13, 2007) (Frank, J.). When analyzing voluntariness, the Court considers "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." Dickerson, 530 U.S. at 434. Furthermore, a statement is involuntary if it "was extracted by threats, violence, or . . . promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir. 2001) (quotations and citations omitted; ellipses in original). Whether a defendant's will has been overborne is determined by looking at the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure. United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998). Courts consider a multitude of factors including the age of the defendant, the level of education of the defendant, the lack of advice to the accused on his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment. Schneckloth v. Bustamonte, 412 U.S. 218, 226

(1973); see also United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005) (stating that "officers elicit confessions through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices. . . . None of these tactics render a confession involuntary, however, unless the overall impact of the interrogation cause the defendant's will to be overborne" (quotations and citation omitted)).

### A. February 18, 2005, Statement

Based on the record currently before the Court, the totality of the circumstances indicates that Defendant was not in custody during the February 18, 2005, interview with Deputy Jansky. As a result, Deputy Jansky was not required to provide Defendant with a rights warning consistent with Miranda. Additionally, nothing in the record before the Court suggests that Defendant's statements were anything short of voluntary.

Immediately upon meeting with Defendant, Deputy Jansky advised Defendant that his participation in questioning was entirely voluntary, that his presence in Jansky's vehicle was entirely voluntary, that Defendant was free to exit the vehicle and terminate questioning at any time, that Defendant was under no obligation to answer Jansky's questions, and that Defendant was not under arrest. Defendant approached and entered Deputy Jansky's vehicle voluntarily and willingly at a location Defendant had suggested, and nothing prevented Defendant from exiting the vehicle and walking away at any point during the interview. Defendant voluntarily agreed to meet and talk with Deputy Jansky after being advised that he was under no obligation to do so. The first three factors weigh heavily against a finding of custody.

Additionally, nothing in the record before the Court indicates that any coercive or "strong-arm" tactics or deceptive strategies were employed by Deputy Jansky when speaking with Defendant, nor was the atmosphere police-dominated. Although Deputy Jansky was wearing his service weapon, the weapon remained holstered at all times, and Deputy Jansky could not even be sure that Defendant noticed he was armed. See United States v. Upshaw, 12-cr-299 (MJD/LIB), 2013 WL 1104759, at *8 (D. Minn. Feb. 5, 2013), report and recommendation adopted, 12-cr-299 (MJD/LIB), 2013 WL 1104267 (D. Minn. Mar. 18, 2013) (finding no strong-arm tactics where officers were armed but did not display their weapons). Nothing in the record before the Court indicates that Deputy Jansky yelled at Defendant or threatened him. See United States v. Brown, 990 F.2d 397, 400 (8th Cir. 1993) (finding no strong-arm tactics where investigators "did not yell at [defendant], [or] threaten him"). Moreover, Deputy Jansky "asked straightforward questions and [Defendant] gave straightforward answers," Axsom, 289 F.3d at 502 (internal quotations omitted), and he did not make any promises to Defendant. Thus, the fourth and fifth factors do not weigh in favor of a finding of custody. Tellingly, at the conclusion of the interview, Defendant simply exited Deputy Jansky's vehicle and returned to work: Defendant was not arrested.

Upon considering the totality of the circumstances, the Court finds that Defendant was not in custody when he spoke with Deputy Jansky on February 18, 2005. Defendant had full, unrestricted freedom of movement during the interview, he was repeatedly told that he was not under arrest, he voluntarily acquiesced to questioning, and he was told that he was under no obligation to answer questions. The interviewing officer made no threats or promises, nor in any other way used strong-arm tactics or deceptive stratagems. The interview, lasting only

approximately 20-30 minutes, was neither inordinately long nor police dominated. Finally, Defendant was not arrested at the end of the interview.

Additionally, nothing in the record before the court suggests that Defendant's statements were anything short of voluntary. In addition to the absence of any strong-arm tactics or a police-dominated environment, nothing in the present record indicates the involvement of police coercion – a "necessary predicate" to finding that a statement is not voluntarily given. Colorado v. Connelly, 479 U.S. 157, 167 (1986).

### B.     November 19, 2012, Statement

Based on the record currently before the Court, the totality of the circumstances indicates that Defendant was not in custody during the November 19, 2012, interview with SA Propes and SA Drengson. As a result, the agents were not required to provide Defendant with a rights warning consistent with Miranda. Additionally, nothing in the record before the Court suggests that Defendant's statements were anything short of voluntary.

At the outset, the agents advised Defendant that he was not under arrest nor would he be arrested, and he was told that he was free to leave at any time. Again, this first factor weighs heavily against a finding of custody. "The first Griffin factor weighs heavily in favor of noncustody when the officers clearly inform a suspect that [he] is free to leave or decline questioning." Sanchez, 676 F.3d at 631. At no point was Defendant's freedom of movement restrained. Additionally, although the interview was initiated by law enforcement, Defendant voluntarily acquiesced to questioning. The record indicates that Defendant was cooperative, voluntarily and knowingly agreed to the interview, and even suggested that he and the agents speak outside, near the front door. Defendant's conduct during the interview supports a finding that he voluntarily acquiesced to questioning. Defendant was friendly and cooperative,

10

describing in detail his online activities and the computers and computer components where investigators might find child pornography. In Axsom, which also was a child pornography case, the Eighth Circuit found that similar conduct on the part of the defendant "supports a finding of voluntary acquiescence." Axsom, 289 F.3d at 502.

Again, as on February 18, 2005, there is no evidence that the agents engaged in strong-arm tactics or deceptive strategies. Nothing in the record indicates that the agents threatened Defendant or otherwise employed coercive techniques. Nor does the fifth factor weigh in favor of a finding of custody, because the interview was not police dominated. In considering this factor, courts examine such considerations as the place and length of the interview. Griffin, 922 F.2d at 1352. The interview took place at Defendant's residence, at a location on his property which Defendant selected. There is a presumption that an interview in the defendant's home is not police dominated. United States v. Czichray, 378 F.3d 822, 826-27 (8th Cir. 2004). Thus, an interview just outside Defendant's front door, when Defendant selected the location for the interview, does not suggest that the interview was police dominated.

Furthermore, the fact that approximately up to eight other law enforcement officers were actively searching Defendant's home during the interview does not mean that the interview was police dominated. "[T]he fifth indicium is whether the questioning, not the execution of the search warrant, was police dominated." United States v. Wallace, 323 F.3d 1109, 1113 (8th Cir. 2003) (emphasis in original); see also Axsom, 289 F.2d at 503 ("While the execution of the search warrant was certainly police dominated, the interview between the two agents and [defendant] was not") (footnote omitted). Thus, the fifth factor does not weigh in favor of a finding of custody.

The sixth and final factor is the easiest to resolve: Defendant was not arrested at the conclusion of the interview; therefore, this final factor does not support a finding of custody.

Additionally, nothing in the record before the court suggests that Defendant's statements were anything short of voluntary. In addition to the absence of strong-arm tactics and a police-dominated environment, discussed above, nothing in the present record indicates the involvement of police coercion – a "necessary predicate" to finding that a statement is not voluntarily given. Connelly, 479 U.S. at 167.

A reasonable person in Defendant's position would not "have felt that he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995). Moreover, the Defendant's freedom was not restrained to a degree associated with formal arrest requiring a Miranda warning. Finally, the circumstances of the interview were not so police dominated as to subvert the Defendant's free will to voluntarily participate in the interview.

As a result, the Court recommends that Defendant's Motion to Suppress February 18, 2005, and November 19, 2012, Statements, Admissions, and Answers, [Docket No. 31], be **DENIED.**

### III. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF NOVEMBER 19, 2012, SEARCH AND SEIZURE, [DOCKET NO. 30]

Defendant moves the Court for an order suppressing any physical evidence obtained as a result of law enforcement's November 19, 2012, search at his home because (1) the search warrant issued in the present case was issued without a sufficient showing of probable cause in the supporting affidavit; and (2) any consent to search provided by Defendant or any other

person is invalid as coerced or beyond that person's apparent authority.[5] (Def.'s Mot. to Suppress Evidence [Docket No. 30]). By his motion, the Defendant asserts only general arguments in support of suppression without any specific reference to the facts of the present case.

### A.     Additional Facts: Affidavit in Support of Search and Seizure Warrant

SA Drengson applied for a search and seizure warrant for Defendant's home in St. Cloud, MN on November 16, 2012, for the seizure of evidence related to child pornography. (See Government Ex. 2, Attachment B for complete list of items to be seized). In his supporting affidavit, made under oath, SA Drengson states that in November 2011, the Department of Homeland Security (DHS) Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HIS) Cyber Crimes Center (C3) Child Exploitation Investigations Unit (CEIU) received information from the Danish National Police Service regarding an internet bulletin board designed to facilitate the receipt and distribution of material depicting the sexual exploitation of minors. (Id. at Drengson Aff. ¶ 16). The bulletin board was purportedly operated by a known child pornography producer. (Id.) The bulletin board hosted and/or linked dozens if not hundreds of gigbytes of content depicting the sexual exploitation of minors. (Id. ¶ 27). In its investigation, the CEIU downloaded samples of content from the bulletin board, in excess of fifty gigabytes. (Id.)

Members of the bulletin board are identified by a screen name and an associated email address. (Id. ¶ 18). During its undercover investigation, CEIU downloaded and captured information relating to members of the bulletin board, including a member using the screen name hobsnaub69. (Id. ¶ 32). The board's profile for hobsnaub69 indicated that the user joined the

---

[5] Since the search in the present case was conducted pursuant to a warrant, any alleged lack of consent to search Defendant's premises on November 19, 2012, is not pertinent to the Court's deliberations for purposes of the present motion to suppress. Indeed, the Government is not arguing consent as an alternative to the warrant.

bulletin board on February 10, 2012, that the user had accessed the board as recently as June 24, 2012, and that the user had supplied the email address hobsnaub69@yahoo.com when registering. (Id.) Investigation also tied the user name to several other child pornography social networks and bulletin boards. (Id. ¶¶ 34-35). The hobsnaub69 screen name had several profile images that appear to be the same person. (Id. ¶ 35). A Facebook profile for Defendant appeared to be the same person as hobsnaub69. (Id.)

SA Drengson further states that in October 2011, a hacker group Anonymous posted a list of user names and profile information from another child pornography bulletin board known as Lolita City. (Id. ¶ 36). Among the profiles posted was the following:

Screen name: hobsnaub69

Email: ederhoff@charter.net

(Id.) On May 30, 2012, a summons was sent to Yahoo!, Inc. requesting subscriber information pertaining to the email address hobsnaub69@yahoo.com. (Id. ¶ 37). The response from Yahoo! identified ederhoff@charter.net as an alternate communication channel associated with the hobsnaub69 email address. (Id.) On June 28, 2012, a summon was sent to Charter Communications, and Charter identified Roddy Ederhoff as the account holder and Defendant's home address – the subject of the search warrant – as the service address. (Id. ¶ 38). Charter further identified that three IP addresses and associated dates and times at which the investigation indicated child pornography bulletin boards were accessed were assigned to Defendant's home address in St. Cloud, MN. (Id. ¶ 39).

Using additional public and law enforcement databases, law enforcement identified "Ederhoff" as Shawn Michael Ederhoff, the Defendant, (Id. ¶ 40), with a physical address in St. Cloud, MN. (Id.)

SA Drengson swore out his affidavit before the Honorable Tony N. Leung on November 16, 2012, and Magistrate Judge Leung issued the search and seizure warrant that same day.

**B.     Analysis**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The Eighth Circuit has explained that "[a]n affidavit for a search warrant need only show facts sufficient to support a finding of probable cause." United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987). Probable cause exists when "a practical, common-sense" evaluation of "all the circumstances set forth in the affidavit" demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Gates, 462 U.S. at 231). "The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (quoting United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995) (quoting, in turn, Gates, 462 U.S. at 238)).

As alluded to above, the sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of

15

probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting Solomon, 432 F.3d at 827; edits in Wiley). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). Nevertheless, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." Gates, 462 U.S. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

Defendant makes no specific argument to support his generalized challenge to the legality of the search warrant; rather, he simply requested a four-corner review and a determination by the Court as to whether the warrant was supported by requisite probable cause.

SA Drengson's affidavit articulates an ample basis upon which to conclude that probable cause existed for the issuance of the search warrant. SA Drengson's affidavit "recounts his professional training and experience, [and] persuasively establishes that it is commonplace for persons, who are involved in [child] pornography, to store and preserve images, diaries, or other records, which depict or describe sexually explicit material involving minors, for long periods of time. Given the apparent unanimity of the Circuits[,] that child pornographers hoard their images of child pornography for lengthy periods of time, [Drengson's] prior experience[] and his opinions that are predicated on that experience[] are commonly held." United States v. Fossum, No. 07-cr-122 (JRT/RLE), 2007 WL 2159502, at *5 (D. Minn. July 25, 2007). SA Drengson's affidavit tracks, step-by-step, how law enforcement monitored an individual's activity and

presence on a child exploitation internet bulletin board, linked the user to multiple child pornography sites, and connected the user to Defendant's home address, both by identifying personal information (including email addresses and profile information) and by linking IP addresses and corresponding dates and times at which the explicit material was accessed to Defendant's home address. It is certainly no stretch to reasonably infer that an individual active in online communities devoted to the creation and exchange of child pornography would accumulate child pornography in his home.

Considering the totality of the circumstances and the deference this Court affords Magistrate Judge Leung's decision in issuing the warrant, the Court concludes that there was at least "'a fair probability that contraband or evidence of a crime' [would] be found" as a result of the search and seizure authorized by the warrant. United States v. Velazquez–Ramos, No. 11-cr-111 (MJD/FLN), 2011 WL 2491373 (D. Minn. Apr. 29, 2011) (Noel, M.J.) (quoting Gates, 462 U.S. at 238), adopted by 2011 WL 2490677 (D. Minn. June 23, 2011) (Davis, C.J.).

Additionally, even if the Court were to conclude that there was not probable cause to support the search warrant, the executing officers' good-faith reliance on that warrant would militate against suppressing evidence obtained in the search. See United States v. Leon, 468 U.S. 897, 919-21 (1984) (exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope"). See also United States v. Johnson, 219 F.3d 790, 791 (8th Cir. 2000) ("Even if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed."); United States v. Rugh, 968 F.2d 750, 753 (8th Cir. 1992) ("When police objectively and reasonably believe that probable cause exists to conduct a search

based on an issuing judge's determination of probable cause, evidence seized pursuant to the ultimately invalid search warrant need not be suppressed."). While Defendant alleges that the search warrant issued in the present case was issued without a sufficient showing of probable cause in the supporting affidavit (Def.'s Mot. Suppress Evid. [Docket No. 30]), he neither cites any specific facts in the record, nor any legal authority, that would tend to suggest that the present case falls outside of Leon's "good faith" exception. Moreover, the Court finds no support for any of the exceptions to Leon in the present record.[6]

Consequently, the Court recommends that Defendant's Motion to Suppress Evidence Obtained as a Result of a November 19, 2012, Search and Seizure, [Docket No. 30], be **DENIED.**

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED**:

1. That Defendant's Motion to Suppress February 18, 2005, and November 19, 2012, Statements, Admissions, and Answers, [Docket No. 31], be **DENIED**, as set forth above; and

---

[6] See Leon, 468 U.S. at 923 (exceptions to the good faith rule when issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," "where the issuing magistrate wholly abandoned his judicial role," or when the warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonable presume it to be valid").

2. That Defendant's Motion to Suppress Evidence Obtained as a Result of November 19, 2012, Search and Seizure, [Docket No. 30], be **DENIED**, as set forth above.

Dated: March 10, 2014                                  s/Leo I. Brisbois
                                                                      The Honorable Leo I. Brisbois
                                                                      U.S. Magistrate Judge

**N O T I C E**

In light of the pending trial date of April 14, 2014, the Court finds it must reduce the time that the parties are allowed to file, and respond to, objections to this Report and Recommendation. The Court discussed this inevitability with counsel at the February 26, 2014, motion hearing, and neither party objected.

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by March 17, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by March 24, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.